# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| Christopher S. McDaniel, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-CV-4243 NKL |
| | ) | |
| George Lombardi, in his official capacity as | ) | |
| Director of the Missouri Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

## SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant George Lombardi misunderstands Plaintiff Christopher McDaniel's claim.

Lombardi states that "McDaniel is challenging Mo. Rev. Stat. § 546.740, which requires the

Director to select at least eight execution witnesses." ECF No. 9, D's Br. at 1. This is incorrect.

McDaniel does not challenge the state statute, nor Lombardi's power or duty to select execution

witnesses under that statute. Instead, McDaniel challenges the *policies* Lombardi put in place for

selecting those witnesses. By their arbitrary and discretionary nature, these policies run the

substantial risk of conditioning a government benefit on a citizen's associations and viewpoint.

Taking McDaniel's allegations and their reasonable inferences as true, the policies have done

exactly that. Simply put, the existence of Mo. Rev. Stat. § 546.740 does not eliminate

Lombardi's constitutional obligation to select witnesses in a nondiscriminatory way.

## I.     *Eleventh Amendment immunity does not apply to a claim for prospective, injunctive relief against this state official*

Lombardi's argument about immunity flows directly from his misconception about the

nature of McDaniel's challenge. As Lombardi notes, state sovereign immunity, memorialized

through common law and the Eleventh Amendment, generally bars federal suits by private

1

citizens against a state absent the state's consent. *See* U.S. CONST. amend. 11; *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890); *Alden v. Maine*, 527 U.S. 706, 713 (1999). However, since *Ex parte Young*, 209 U.S. 123 (1908), the courts have repeatedly recognized an "important exception" to state sovereign immunity: "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (citing *Edelman v. Jordan*, 415 U.S. 651, 666–667 (1974)); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276–77 (1997) (reaffirming *Edelman*); *Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (internal brackets and quotation marks omitted); *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004).

*Balogh v. Lombardi*, 816 F.3d 536 (8th Cir. 2016), does not—and could not—change this longstanding Supreme Court guidance. That case had a different posture. In *Balogh*, plaintiffs *did* challenge the constitutionality of a state statute, one they had violated. But the only way they could be penalized for their violation was through a private lawsuit brought by an individual third party. The court held that any connection Lombardi had to the statute was too attenuated to permit the suit to go forward. The *Balogh* court concluded that Lombardi had "*no* authority to enforce the challenged law." *Id.* at 546 (internal quotation marks omitted).

Here, McDaniel does not challenge Mo. Rev. Stat. § 546.720 but Department of Corrections policies and customs that Lombardi himself approved and implemented. Lombardi

2

not only has "some connection" to these policies, *id.* at 545 (quoting *Ex parte Young*, 209 U.S. at 157), he has *all* of the authority over them.

Recognizing that the Eleventh Amendment does not preclude federal claims against final policymakers for the ongoing effects of their policies, courts in this circuit properly conduct the "straightforward inquiry" set out in *Coeur d'Alene* and *Verizon*. They routinely permit Section 1983 lawsuits against the state officials responsible for allegedly unconstitutional policies and customs. *Guggenberger v. Minnesota*, --- F. Supp. 3d ----, 2016 WL 4098562, at \*10–\*12 (D. Minn. July 28, 2016) (rejecting immunity defense and permitting suit against commissioner of department of human services for DHS' policy of placing certain Medicaid recipients on waiting lists as allegedly violative of Constitution and federal statutes); *Brooks v. Gant*, 2012 WL 4482984, at \*4–\*5 (D.S.D. Sept. 27, 2012) (rejecting immunity defense and permitting suit against secretary of state for that department's policy relating to early voting in certain county); *Brand v. Gibson*, 4:05CV3194, 2006 WL 2009110, at \*2 (D. Neb. July 17, 2006) (raising immunity and parsing a pro se litigant's allegations against state official confining him to mental health facility to permit suit claiming he was prospectively entitled to less restrictive setting); *Rothman v. Lombardi*, 2013 WL 1293820, at \*3 (E.D. Mo. March 28, 2013) (disposing of Eleventh Amendment immunity and permitting claim against Lombardi for prospective relief from federal-law violation he was allegedly responsible for); *Rogers v. Mo. Dep't of Corrs.*, 11-CV-4088, 2011 WL 3320521, at \*2 (W.D. Mo. Aug. 2, 2011) (same); *Van Orden v. Schafer*, 129 F. Supp. 3d 839, 842 (E.D. Mo. 2015) (finding, in part, for plaintiffs who had sued state officials responsible for implementing policies to carry out state statute requiring confinement of sexually violent predators and holding that some policies were unconstitutional as applied). That same inquiry should be performed here.

3

## II.    *Witnessing an execution is an unusual benefit but it is a benefit nonetheless*

It is well established that the government cannot deny a benefit to a person because he has exercised his constitutional rights, even if it could otherwise deny that benefit for "any number of reasons" or no reason at all. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also Koontz v. St. Johns River Water Management Dist.*, 133 S. Ct. 2586, 2595 (2013). The deprivation of a benefit "need not be particularly great in order to find that rights have been violated." *Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976) (plurality opinion).

Although cases about unconstitutional conditions often involve a deprivation of government money (or potential government money, such as a chance to bid on a public-works contract), government *access* may also be a benefit. When a state statute requires the selection of at least eight people to witness an execution, a person who accepts that selection is serving as a state volunteer who helps the Department of Corrections fulfill that obligation. Several courts have acknowledged that it is unconstitutional to deprive a person of the opportunity to serve as a volunteer because they have exercised their free-speech rights. *See Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 25 (2d Cir. 1979); *see also Cuffley v. Mickes*, 208 F.3d 702, 707 n.5 (8th Cir. 2000); *Anderson v. McCotter*, 100 F.3d 723, 727 (10th Cir. 1996) (holding correctional facility intern was employee and could not have been fired for her speech, but stating in dictum that had she been a volunteer the analysis would be the same); *Versage v. Township of Clinton*, 984 F.2d 1359, 1364 (3d Cir. 1993) (assuming without deciding that the opportunity to volunteer is a government "benefit"); *Hanson v. Cameron Cty.*, 2010 WL 148723, at \*6 (S.D. Tex. 2010) (county jail volunteer minister's credentials to access facility were a "benefit"); *Allen v. School Bd.*, 782 F. Supp. 2d 1304, 1319, 1319 n.22 (N.D. Fla. 2011) (permitting parents' challenge to school board policy

4

prohibiting parent volunteers from dialoguing with students about religion and noting that although there is no constitutional right to volunteer, prohibiting parent from volunteering because she was unwilling to agree to policy stated constitutional claim); *see also Rutan v. Repub. Party of Ill.*, 497 U.S. 62, 75 n.8 (1990) (approving in dictum the principle that "even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights" violates the Constitution).

In *Wishnatsky v. Rovner*, the Eighth Circuit reversed and remanded the dismissal of a First Amendment claim by a pro se plaintiff who had sought representation at a public law school clinic. 433 F.3d 608, 611–12 (8th Cir. 2006). The plaintiff claimed the clinic had denied him representation because he had criticized an earlier clinic lawsuit. The Court acknowledged the clinic could deny representation to the plaintiff for any number of legitimate reasons— including the fact that many more people apply for representation than the clinic had resources to provide—but viewpoint discrimination was not one of them. *Id.* at 612–13. It pointed out that its decision should not come as a surprise because it had previously held that "a State may not deny access to an Adopt–A–Highway program or a vanity license plate program based on an applicant's views." *Id.* at 611 (citing *Robb v. Hungerbeeler*, 370 F.3d 735, 741 (8th Cir. 2004); *Lewis v. Wilson*, 253 F.3d 1077, 1081–82 (8th Cir. 2001)); *see also Cuffley v. Mickes*, 208 F.3d 702, 707 n.5 (8th Cir. 2000) ("This 'unconstitutional conditions' doctrine is not limited to valuable government benefits or even benefits at all. The Supreme Court has held that a legal entitlement to a position or program is not necessary in order to assert an unconstitutional conditions claim.").

Witnessing an execution may be an unusual benefit, but it is a benefit nonetheless. The opportunity to serve as a volunteer execution witness is no less a benefit than the opportunity to

5

serve as a volunteer firefighter or commissioner, particularly because this volunteer opportunity is closely related to McDaniel's profession of reporting on the death penalty and courts have long recognized the importance of public access to, and understanding of, executions. *See Hanson*, 2010 WL 148723, at \*5 (noting that the plaintiff minister's "volunteer credentials had an incredible value to her" and "were the only means by which she could meet individually with the prisoners to which she ministered"); *Calif. First Amendment Coalition v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002) ("[a]n informed public debate is critical in determining whether execution by lethal injection comports with 'the evolving standards of decency which mark the progress of a maturing society'") (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Lombardi contends that the department has a duty to carry out executions and to select a minimum number of witnesses thereto. His policies to carry out that selection impermissibly promote viewpoint and associative discrimination in violation of the Fourteenth Amendment.

### III.    *McDaniel's allegations are plausible and he has standing to assert them*

McDaniel has alleged that Lombardi's policies give rise to a significant, unjustifiable risk of viewpoint and associative discrimination. When a licensing or permitting policy related to expression places unbridled discretion in the hands of a government official, courts "must entertain an immediate facial attack on the law." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988) ("a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers").[1] The selection of execution witnesses

---

[1]  In *Lakewood*, which involved an ordinance for licensing news racks, the Court explained, *id.* at 759–60:

> The regulatory scheme in the present case contains two features which,
> at least in combination, justify the allowance of a facial challenge.
> First, Lakewood's ordinance requires that the Newspaper apply
> annually for newsrack licenses. Thus, it is the sort of system in which
> an individual must apply for multiple licenses over time, or periodically

is, in essence, the licensing of certain people to serve as temporary government volunteers. If selection as a witness did not, on its face, depend upon a person's expression and association, a facial challenge would likely not be appropriate. But Lombardi's own policies form the nexus between expression and service as an execution witness because his department's application requires that would-be witnesses explain why they want to see the execution and report whether they have ever been a member of a group that supports or opposes the death penalty. These policies "threaten [First Amendment] risks to a significant degree." *Id.* at 759 (identifying a major risk "associated with unbridled licensing schemes" is "the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action").[2]

Furthermore, denying all applicants in a one-year period who wrote that they sought to ensure the execution's constitutionality (including McDaniel) gives rise to the reasonable inference that the department chose to use that question to select execution witnesses and plausibly intended to—and did—make use of it to engage in viewpoint discrimination. This is enough to state an as-applied challenge to Lombardi's selection policies.

renew a license. When such a system is applied to speech, or to conduct commonly associated with speech, the licensor does not necessarily view the text of the words about to be spoken, but can measure their probable content or viewpoint by speech already uttered. A speaker in this position is under no illusion regarding the effect of the "licensed" speech on the ability to continue speaking in the future. Yet demonstrating the link between "licensed" expression and the denial of a later license might well prove impossible. While perhaps not as direct a threat to speech as a regulation allowing a licensor to view the actual content of the speech to be licensed or permitted, a multiple or periodic licensing requirement is sufficiently threatening to invite judicial concern.

[2] McDaniel's claim is properly read as a free speech claim, with the free speech clause being applicable to the states via the due process clause of the Fourteenth Amendment. If that is not sufficiently clear, McDaniel requests leave to amend.

McDaniel has standing to challenge the constitutionality of Lombardi's selection policies. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding that to establish a case or controversy, a party show should an injury-in-fact; a causal connection between the injury and the complained-of conduct; and the redressability of the injury by a favorable decision). He applied to serve as an execution witness, and his application was denied. And there is a substantial, unjustifiable risk—based on Lombardi's application questionnaire and alleged course of conduct—that the denial was caused by unconstitutional, viewpoint-discriminatory conditions Lombardi placed on would-be execution witnesses. In other words, McDaniel's injury-in-fact is that he was subjected to a significant threat of being denied a government benefit for a discriminatory reason. *Wishnatsky*, 433 F.3d at 613 (holding that law clinic could not deny client representation based on previous expressive conduct); *Dorr v. Weber*, 741 F. Supp. 2d 1010, 1019–20 (N.D. Iowa 2010) (holding that sheriff had "single handedly hijacked the First Amendment and nullified its freedoms and protections" by denying a concealed carry permit to a person who engaged in unpopular speech).

To the extent Lombardi is arguing that McDaniel's application to serve as an execution witness was denied entirely based on constitutionally permissible reasons or that his policies do not run the substantial risk of promoting viewpoint and associative discrimination, those are questions of fact that should not be decided at this stage of the case. For these reasons, Lombardi's motion to dismiss should be denied.

8

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
JESSIE STEFFAN, #64861MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
406 W 34th Street
Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF

9

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016, I filed the foregoing with the Clerk of the Court

using the CM/ECF system, which sent notification to counsel of record.

/s/ Anthony E. Rothert