# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER S. MCDANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:16-cv-04243-NKL |
| ) | |
| GEORGE LOMBARDI, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss, [Doc. 9]. For the following reasons, Defendant's Motion to Dismiss is denied.

## I.  Background[1]

Plaintiff Christopher McDaniel is an investigative reporter whose work is primarily focused on the death penalty. His reporting has at times been critical of Missouri officials. In January 2014, Plaintiff applied to witness a Missouri execution by completing the Missouri Department of Correction's State Witness Application form. He never received a response and was not afforded the opportunity to be a witness.

Under Mo. Rev. Stat. § 546.740, "the director of the department of corrections shall invite the presence of . . . at least eight reputable citizens, to be selected by him . . . to witness [an] execution." The Missouri Department of Corrections maintains no policy governing requests

---

[1] These facts appear in Plaintiff's Complaint. [Doc. 1]. For purposes of deciding the Defendant's Motion to Dismiss, the Court accepts Plaintiff's factual allegations as true and construes them in the light most favorable to him. *See Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).

1

to witness an execution by members of the public or media, leaving the decision to the Director's discretion. There are no departmental polices for how he should exercise his discretion.

Plaintiff filed suit charging that the Department of Correction's lack of criteria for the selection of execution witnesses is a violation of the First Amendment "in that the opportunity to witness an execution and report on what was witnessed requires permission that is given or withheld without any specific standards, other than age." This unbridled discretion allegedly creates an impermissible risk that free expression will be suppressed. [Doc. 1, p. 2].

Defendant filed a Motion to Dismiss under Rule 12(b)(1) for lack of subjection matter jurisdiction and lack of standing. Defendant also moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**II.     Discussion**

Plaintiff sues Defendant in his official capacity as Director of the Missouri Department of Corrections. Defendant first moves to dismiss for lack of subject matter jurisdiction by arguing that this suit is barred by the Eleventh Amendment. Defendant also moves to dismiss for lack of standing.

**A.  Standing**

The Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1146 (2013). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The burden corresponds with the degree of evidence required at the relevant stage of litigation. *Id.* "At the pleading stage . . . general factual

allegations of injury . . . may suffice." *Id.*; *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013).

To demonstrate standing, a plaintiff must show: (1) he has "suffered an injury-in-fact"; (2) the injury is "fairly ... trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Balogh v. Lombardi*, 816 F.3d 536, 541 (8th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendant asserts that Plaintiff has not suffered an injury in fact. [Doc. 9, p. 8].[2] In order to establish an injury-in-fact, the plaintiff must establish the invasion of a legally protected interest. *Arizona State Legislature v. Arizona Independent Redistricting Com'n.,* 135 S. Ct. 2652, 2663 (2015). That invasion must be concrete, particularized, and actual or imminent as opposed to conjectural or hypothetical. *Balogh*, 816 F.3d at 541.

1. **Legally Protected Interest**

Defendant contends that Plaintiff has no cognizable interest in being a witness because the Eighth Circuit has not recognized a right to view an execution. Plaintiff, however, does not claim that he has a right to view an execution. He claims that if the Director is given discretion to choose witnesses, there must be criteria to avoid the risk of viewpoint discrimination. His claim is premised in part on *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 758 (1988). In that case the Supreme Court held that under certain circumstances unfettered discretion to grant a license can violate the First Amendment because it creates a substantial, unjustified risk of viewpoint discrimination and thereby chills future expression. Here Plaintiff points to the lack of policies in the Department of Corrections to guide the Director's discretion. The same reasoning that led the Supreme Court in *Lakewood* is applicable here although the challenge is not to a

---

[2] The other requirements are clearly met.

statute but instead to departmental policies and involves being an execution witness rather than the licensee of a newsstand. Because Plaintiff is alleging he was subjected to this unconstitutional process, he was injured in fact. Plaintiff has also alleged facts that indicate his risk is not speculative. Defendant "den[ied] all applicants in a one-year period who wrote that they sought to ensure the execution's constitutionality (including [Plaintiff])." [Doc. 12, p. 7]. The Defendant also requires applicants to state on their application form whether they have publicly supported or opposed the death penalty. Accepting Plaintiff's factual allegations as true, he has satisfied the injury in fact requirement. *See also Dorr v. Weber*, 741 F. Supp. 2d 1010, 1019–20 (N.D. Iowa 2010).

Defendant also seems to argue as a separate matter that Plaintiff was not denied a government benefit and therefore he does not have standing. While generally a government benefit involves a financial benefit, there are other benefits such as the opportunity to volunteer that are also protected by the Constitution. Courts have routinely recognized that the right to volunteer is a benefit that cannot be denied unconstitutionally. *See Cuffley v. Mickes,* 208 F.3d 702, 707 n.5 (8th Cir. 2000) (finding that the State could not deny an application to "Adopt-A-Highway" because of an applicant's speech); *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992) (holding a probation department volunteer's termination violated the First Amendment); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 25 (2d Cir. 1979) (assuming without deciding that the opportunity to volunteer as a fireman was a benefit); *see also Versage v. Township of Clinton*, 984 F.2d 1359, 1364 (3d Cir. 1993) (same); *Hanson v. Cameron Cty.*, 2010 WL 148723, at *6 (S.D. Tex. 2010) (holding a county jail volunteer minister's credentials to access facility were a "benefit").

4

A suit alleging impermissible viewpoint discrimination "is not limited to valuable government benefits or even benefits at all." *Cuffley v. Mickes*, 208 F.3d 702, 707 n.5 (8th Cir. 2000) (citing *Rutan v. Republican Party*, 497 U.S. 62, 72 (1990)). "Even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Id.* (citation omitted).

Witnessing an execution is, as Plaintiff argues, "a strange benefit, but a benefit nonetheless" and an individual can challenge denial of that benefit if it was denied for unconstitutional reasons. *See Wishnatsky v. Rovner*, 433 F.3d 608, 611–12 (8th Cir. 2006).

### 2. Concrete, Particularized & Actual

Defendant further argues that the mere *risk* of viewpoint discrimination cannot establish Article III standing without evidence that Defendant engaged in such discrimination. [Doc. 14, pp. 7–8]. But as discussed above, Plaintiff has alleged facts that if proven create an inference that the risk in this case is not speculative. Furthermore, the Supreme Court in *Lakewood* explained circumstances under which it is unnecessary to establish that a defendant has engaged in viewpoint discrimination. Rather a substantial risk of viewpoint discrimination is enough to state a claim.

In *Cuffley*, the State denied an application to "Adopt-A-Highway" from the Ku Klux Klan. The Eighth Circuit considered, amongst other evidence, a letter the State sent outlining a number of reasons it denied the application. *Cuffley*, 208 F.3d at 707–08. The Eighth Circuit concluded, despite the State's proffered evidence to the contrary, "that the State treated the Klan differently from the vast majority of applicants based on the State's perception of the Klan's beliefs and advocacy." *Id.* at 707.

5

Here, Defendant never responded to Plaintiff's request, but Defendant "den[ied] all applicants in a one-year period who wrote that they sought to ensure the execution's constitutionality (including [Plaintiff])." [Doc. 12, p. 7]. Plaintiff argues that this "gives rise to the reasonable inference that the department chose to use that question to select execution witnesses and plausibly intended to—and did—make use of it to engage in viewpoint discrimination." *Id.* Accepting Plaintiff's factual allegations as true, he has satisfied the injury in fact requirement. *See also Dorr v. Weber*, 741 F. Supp. 2d 1010, 1019–20 (N.D. Iowa 2010).

### B. Sovereign Immunity & *Ex Parte Young*

The Defendants also asserts he is immune from suit under the Eleventh Amendment. "[T]he Eleventh Amendment bars damage relief against the States, but it does not prohibit certain suits seeking declaratory and injunctive relief against state officers." *Dakota, Minn. & Eastern R.R. Corp. v. South Dakota*, 362 F.3d 512, 516 (8th Cir. 2004) (internal quotations and citation omitted). Under *Ex parte Young* and its progeny, "a private party may seek prospective injunctive relief in federal court against a state official, even if the state is otherwise protected by Eleventh Amendment immunity." *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001).

A court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene*, 521 U.S. at 296); *see also Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1042 (8th Cir. 2002). For *Ex Parte Young* to apply, however, the named state official "must have some connection with the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. at 157. Defendant argues that "Director Lombardi has no power to launch any type of enforcement

6

action under Mo Rev. Stat. § 546.740 against McDaniel[,] [s]o this case falls outside of *Ex Parte Young*, and is barred by the Eleventh Amendment." [Doc. 9, p. 2].

Defendant relies primarily on *Balogh v. Lombardi*, 816 F.3d 536 (8thCr.2016), a recent Eighth Circuit opinion, which discussed whether Director Lombardi was subject to suit under *Ex parte Young* in the context of a different provision of the Missouri death penalty statute. In *Balough,* the Eighth Circuit analyzed whether Director Lombardi had the power to enforce the provision of the Missouri statute prohibiting disclosure of the identities of individuals participating in executions. *See* Mo. Rev. Stat. § 546.720.3. The *Balogh* plaintiffs had allegedly violated that statute and then challenged its unconstitutionality as a credible threat of enforcement that chilled speech. The Eighth Circuit found that any connection between Director Lombardi and enforcement of the statute was too remote to permit the suit to go forward because Director Lombardi "lack[ed] the authority to enforce the challenged statute." *Balogh*, 816 F.3d at 544. It was the members of the execution team, etc., not Director Lombardi, who were authorized to sue under the statute in question.

The Court finds *Balogh* distinguishable. Director Lombardi's relationship with a potential prosecution by a third party for a violation of a privacy provision was clearly attenuated in *Balogh*. Conversely, the authority to select execution witnesses rests solely with Director Lombardi. It is also logical that he has authority to implement policies to identify objective criteria for the selection process since he is the director of the Department of Corrections.

Finally, Defendant raises the novel argument that *Ex Parte Younger* only applies if the government official is enforcing a statute rather than implementing a statute. This argument has no basis in law and would be contrary to the reasoning of *Ex Parte Younger.* Defendant's reading of "enforcement authority" would provide no remedy for continuing violations of federal

7

law by a state official when they were using their authority to implement polices rather than "enforcing" a specific statute. The Court rejects this argument by Defendant.

In his reply brief, Defendant raises a new argument: that the selection of witnesses for an execution is a "core state function" and implicates a "special sovereignty interest." [Doc. 14, pp. 5–7]. The Court rarely relies on new arguments in reply briefs because the respondent did not have an opportunity to respond. *See United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2013) ("When courts have exercised their authority to decline consideration of issues raised in reply briefs, they have typically done so out of concern that the opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond."). Because Plaintiff did not have an opportunity to respond to this issue, and because Defendant cited no authority that selecting execution witnesses is a "core state interest," and why that would justify a violation of federal law, the Court declines to analyze this argument at this time.

### C. 12(b)(6) Failure to State a Claim

Defendant also argues that Plaintiff has failed to plead sufficient facts to state a claim. On a motion to dismiss, the Court construes the complaint liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). A complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to

dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Plaintiff alleges both facial and as applied challenges to Defendant's selection of execution witnesses. Specifically, Plaintiff's Complaint alleges that the lack of criteria for selecting witnesses, "provide[s] the opportunity for discrimination based on viewpoint or retaliation for First Amendment protected activity" [Doc. 1, p. 5]. Defendant contends that this is insufficient: "[I]t is not enough to allege that a defendant *might* break the law." [Doc. 14, p. 9].

The Court disagrees. On his facial challenge, Plaintiff has sufficiently plead that Director Lombardi's policies and customs, or lack thereof, relate to the selection of execution witnesses and "permit unbridled discretion to deny an adult citizen the benefit of serving as an execution witness based on the individual's viewpoint, expressive or press activity, or membership in a church or other organization." [Doc. 1, p. 6]. As alleged by Plaintiff, Director Lombardi has sole decision-making authority when selecting execution witnesses and there is no official policy for how that decision is made. This authority allegedly risks impermissible viewpoint discrimination. *See Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 758 (1988) ("Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression."). To dismiss pleadings that do not have direct evidence of viewpoint discrimination would necessarily deny challenges like those upheld in *Lakewood*.

As to Plaintiff's applied challenge, Defendant argues that Plaintiff's Complaint does not plead sufficient facts to state a cause of action. Plaintiff, however, has submitted the application used to select witnesses for an execution, and it "requires each prospective witness to state, among other things, whether they are or ever have been a member of a group or organization opposed to, or in support of, the death penalty." [Doc. 1, p. 4]. Further, in reviewing the application records for a one-year period, "every applicant who, like Plaintiff, expressed a desire to ensure that execution [was] carried out properly and constitutionally was denied the opportunity to witness an execution." *Id.* at 5. These allegations, viewed in the light most favorable to Plaintiff, are sufficient to state a claim that Defendant discriminated against Plaintiff based on his viewpoint when he was denied an opportunity to serve as a witness to an execution. This is particularly so given Plaintiff's publicly stated opinions and his journalistic articles.

Of course, Defendant may have denied Plaintiff's application to serve as an execution witness for entirely permissible reasons, and Defendant's policies, or lack thereof, may not run a substantial enough risk of viewpoint discrimination, but these questions cannot properly be resolved at this stage of the litigation. Plaintiff has pled that Defendant's policies and customs, or lack thereof, run the risk of impermissible viewpoint discrimination, has pled sufficient facts to draw a reasonable inference that Defendant discriminated against Plaintiff based on his viewpoint, and has provided Defendant fair notice of his claims.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss, [Doc. 9], is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 30, 2016
Jefferson City, Missouri